## THE COLUMBIA.

### THOMPSON et al. v. McINTOSH et al.

#### (District Court, E. D. New York. March 30, 1900.)

ADMIRALTY—BILL OF REVIEW.

> A court of admiralty may entertain a bill of review, where, through fraud, its powers and process have been abused, and used to effect a tortious purpose, as where, through collusion between the owner of a small interest in a vessel and others, a decree has been obtained, and the vessel subjected to sale for the payment of an illegal claim, and for an inadequate price, without the knowledge of the other owners; and in such case no technical limitation will be applied to defeat an application for the correction of its decree, or such other relief as it is within the power of the court to afford.

In Admiralty. This is a libel in the nature of a bill of review to obtain a review of the proceedings and decree in a former suit. On exceptions to libel.

Benedict & Benedict (E. G. Benedict, of counsel), for libelants.

Foley, Wray & Taylor (Mr. Wray, of counsel), for defendant Metcalfe.

James J. Macklin (Mr. Gove, of counsel), for defendants McIntosh, Abrams, and Dickens.

THOMAS, District Judge. The question arises, on exceptions, whether a libel may be filed to review proceedings in an action heretofore pending, but now adjudicated by this court. The facts, as gathered from the libel and admitted by the exceptions, are as follows: The present libelants owned a fishing schooner, Columbia, in common with one McIntosh, whose interest was $9/64$. McIntosh was a member of a firm, who furnished supplies for use on the schooner, to the amount of $153.83, from the payment of which it is alleged in the present libel that the vessel and her owners were exempt. On January 26, 1899, the firm assigned the claim to one Metcalfe. On January 30, 1899, Metcalfe, through the proctors in whose office he was an employé, furnished as a stipulator for the costs one Westway, who was the member of the firm executing the assignment to him, and filed a libel in personam in this court against the libelants in this action and said McIntosh to recover such claim, and prayed for process of foreign attachment, which was issued. The marshal returned that he had been unable, after due inquiry and search, to find the respondents, "Lewis C. Thompson et al.," within his district, and that he had on January 31, 1899, attached the schooner. McIntosh was at the time within the jurisdiction of the court, a resident of Brooklyn, his name and address appeared in the Brooklyn directory, and he could have been notified of the bringing of the suit, and process could have been served upon him. But no notice of the bringing of the suit or of the attachment was ever given to any of these libelants, or to any owner of the schooner, unless to said McIntosh; and, if such notice was given to him, he willfully refrained from informing the libelants herein, and they re-

mained in complete ignorance of such proceedings. On the return of the process in the former suit, no one appeared, and default and order of reference were had. The commissioner reported due the libelant the sum of $231.79, and on February 10, 1899, a final decree was entered for the sum of $324.47, damages and costs. On the same day execution was issued, and on February 27, 1899, the marshal returned that he had sold the schooner Columbia for the sum of $700. The sale was to William H. Abrams and James Dickens, respondents in this proceeding, who subsequently took out papers in the custom house of the port of New York, on the marshal's bill of sale, alleging that the original papers of the vessel had been lost, although said papers are, and were then, in the custom house at Perth Amboy, N. J., where the schooner was enrolled. McIntosh was cognizant of the proceedings in the first libel, and was privy thereto, and Westway was present and bid at the sale of the schooner. McIntosh gave no notice to the libelants herein, and they were kept in complete ignorance of the proceedings until one of them, in Matanzas, Cuba, chanced to discover from the newspaper the fact of the record of the sale of the Columbia by the United States marshal. He at once communicated with his brothers, who were in Havana, Cuba, who, upon their return to New York, notified the other libelants, Moore and Hathaway, who had been kept in ignorance of the same up to that time. The whole proceedings in the former suit were collusive and fraudulent, and knowledge of such proceeding was purposely withheld from the libelants by Metcalfe and McIntosh; the return of the marshal was false and erroneous; the vessel was sold for a sum far below her true value; and the decree in the former suit was obtained by fraud. The present libelants pray that process issue against the vessel and the respondents; that the schooner may be attached, and the respondents cited to appear and answer on oath the allegations of the libel, and that the court review the proceedings in the decree heretofore had, and set aside the same, and annul the bill of sale given by the marshal under the execution on the said decree to the purchasers, Abrams and Dickens, and condemn the respondents herein to pay the costs and disbursements of the proceedings; or, in the alternative, that the court decree that the respondents, or some of them, are liable personally for the damages sustained by the libelants herein, and that they pay to the libelants the fair value of their interest in the schooner at the time she was sold, together with the costs and disbursements. The gist of the above matter is that during the absence of some of the libelants an owner of a small interest in the vessel, who was also a member of a firm which had furnished supplies for use on the schooner, fraudulently employed the process of this court to obtain a sale of the vessel, and that his firm, for that purpose, colorably transferred the claim to a third person and caused the suit to be so conducted as to conceal notice of its existence from the other owners, and that by this fraudulent concealment and conduct the interest of the libelants in the schooner was sacrificed. For the present purpose the statements in the bill must be taken to be true.

It would be useless to pursue the history of bills of review, or to

trace the definite limits within which they are now permitted. Those curious concerning the origin or development of the practice may consult Dexter v. Arnold, 5 Mason, 303, Fed. Cas. No. 3,856, decided in 1829 by Judge Story, wherein the ordinance of Lord Bacon, which furnishes the fundamental law on the subject, and pertinent holdings, are considered. In The New England, 3 Sumn. 495, Fed. Cas. No. 10,151, decided in 1839, the same judge discusses the permissible use of the writ in courts of admiralty, and comes to the hesitating conclusion to which attention will be called. In Massie v. Graham, 3 McLean, 41, Fed. Cas. No. 9,263, decided in 1842, the subject receives further attention. In 3 Enc. Pl. & Prac. 570–600, the past and present use of bills of review in the courts of the United States and of the several states is set forth instructively. This court at present is concerned with the existing authority respecting the survival of the practice in courts of admiralty. The following several propositions are touched upon, and measurably supported by the decisions placed beneath them.

1. A bill of review in an admiralty court is permitted by the practice of that court, in the absence of other remedy. The New England, 3 Sumn. 495, 506, Fed. Cas. No. 10,151; Janvrin v. Smith, 1 Spr. 13, Fed. Cas. No. 7,220; Snow v. Edwards, 2 Lowell, 273, Fed. Cas. No. 13,145, where the authorities are reviewed; Car Co. v. Hopkins, 4 Biss. 51, Fed. Cas. No. 10,334; Jackson v. Munks (C. C.) 58 Fed. 596, affirmed in 13 C. C. A. 641, 66 Fed. 571; The Sparkle, 7 Ben. 528, Fed. Cas. No. 13,207. In the last case the matter was presented to the court by petition, but the usual proceedings were had; that is, process in rem and in personam was issued, and the vessel sold in the primary suit was seized.

2. The bill of review in an admiralty court may be filed to review a decree of such court after the term at which it was enrolled. Janvrin v. Smith, 1 Spr. 13, Fed. Cas. No. 7,220; Snow v. Edwards, 2 Lowell, 273, Fed. Cas. No. 13,145 (after the term has passed in ordinary cases, and after 10 days in defaulted cases); Car Co. v. Hopkins, 4 Biss. 51, Fed. Cas. No. 10,334; Jackson v. Munks (C. C.) 58 Fed. 596, affirmed in 13 C. C. A. 641, 66 Fed. 571; The New England, 3 Sumn. 495, 506, Fed. Cas. 10,151. In the last case Judge Story stated as follows:

"But, upon the most careful reflection which I have been able to bestow upon it, the result to which I have brought my mind is that, if the district court has a right to entertain a libel of review in any case, it must be limited to very special cases, and either where no appeal by law lies, because the matter is less in value than is required by law to justify an appeal, or the proper time for any appeal is passed, and the decree remains unexecuted, or where there is clear error in matter at law, or, if not, where the decree has been obtained by fraud, or where new facts, changing the entire merits, have been discovered since the decree was passed."

In this connection the discussion by Judge Betts in The Martha, 1 Blatchf. & H. 151, Fed. Cas. No. 9,144, is of interest. In the Admiralty Practice issued by that learned judge in 1838, the subject is considered, and the conclusion is apparently stated as follows:

"The power, however, will only be exercised by the court when no relief by appeal can be had; and the declaration of the court of last resort upon

the subject imports that in this country courts of admiralty cannot, in any case, sustain such bill filed subsequent to the term in which the decision is rendered." [Page 102].

3. A bill of review lies in admiralty where, in a suit in rem or in personam, property has been disposed of without personal notice to the owner. Janvrin v. Smith, 1 Spr. 13, Fed. Cas. No. 7,220, which illustrates the justice of its holding by a supposed instance under the supreme court admiralty rule No. 2, where there is a clause of foreign attachment in a suit in personam. Judge Lowell adopts the illustration in Snow v. Edwards, 2 Lowell, 273, 279, Fed. Cas. No. 13,145; Car Co. v. Hopkins, 4 Biss. 51, Fed. Cas. No. 10,334; Jackson v. Munks (C. C.) 58 Fed. 596, affirmed in 13 C. C. A. 641, 66 Fed. 571.

4. The bill of review in admiralty may be filed where there has been fraud in the proceedings in the original suit. Janvrin v. Smith, 1 Spr. 13, Fed. Cas. No. 7,220; Snow v. Edwards, 2 Lowell, 273, 275, Fed. Cas. No. 13,145; Car Co. v. Hopkins, 4 Biss. 51, Fed. Cas. No. 10,334; The Sparkle, 7 Ben. 528, Fed. Cas. No. 13,207; Jackson v. Munks (C. C.) 58 Fed. 596, affirmed in 13 C. C. A. 641, 66 Fed. 571; The New England, 3 Sumn. 495, 506, Fed. Cas. No. 10,151.

5. A sale of a vessel in admiralty may be set aside where there has been fraud or misconduct in the purchaser, fraudulent negligence or misconduct in any other person connected with the sale, surprise or misapprehension created by the conduct of the purchaser, or by some other person interested in the sale, or by the officer who conducts it. The Sparkle, 7 Ben. 528, Fed. Cas. No. 13,207, where Judge Benedict said:

"The rule in England appears to be to set aside the sale where the price bid is so inadequate that it would be against conscience to permit the purchaser to derive such advantage from the neglect of the parties interested. It is not necessary, therefore, to determine from the evidence in this cause that fraud or collusion on the part of this purchaser has been shown. It is sufficient if there has been such a surprise, and a sale at such an inadequate price as that it would be against conscience to allow the purchaser to retain the property against the rights of innocent parties. Looking, then, to the evidence, while it cannot be said that all the allegations of the petition have been proved, a clear case of surprise is shown. The petitioner was in Virginia. He had no reason to suppose that the vessel was to be removed beyond his reach, nor any reason to suppose that she was liable to seizure and sale, for his conveyance contained an express covenant that the vessel was free from liens. Nothing occurred to give him notice of the proceedings taken by Pratt until he found the vessel in this port in the hands of Tuttle, as purchaser at the marshal's sale. A gross inadequacy of price is also shown. The evidence is that the vessel was worth from $8,000 to $10,000, and she was sold for $1,000. To permit such a sale to stand would be to permit Tuttle to take an unconscionable advantage of the ignorance of the petitioner in respect to the pendency of any proceedings against this vessel. * * * In addition it must be said that while it is true that Tuttle, the buyer, testifies in the most explicit manner that he is a bona fide purchaser, having no sort of connection with any of the other parties to this proceeding, still there are facts in the case calculated to raise suspicion in respect to his action in the premises. Certainly he can have no cause of complaint, provided he be made whole for his outlay by reason of his purchase and these proceedings. The fact that an undue profit would accrue to the purchaser at a judicial sale is no reason for refusing to set aside such sale when justice demands it."

Section 918 of the Revised Statutes provides that:

"District courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the supreme court under the preceding section, * * * regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

Here is a wide power given to this court to entertain a proceeding to correct any fraud perpetrated through its process upon its suitors, and its discretion in selecting the means whereby the matter shall be brought to the attention of the court, and of subsequently carrying it on, should not be diminished unless there be a statute or a rule of the supreme court inconsistent with the method adopted. Such limitation upon the power of the court, either by congress or by the supreme court, acting under section 917 of the Revised Statutes, has not been suggested upon the present argument, and it is thought that Judge Lowell successfully treats the subject in Snow v. Edwards, supra. It would be an intolerable rule that should disable this court from disturbing upon its own motion, or upon suggestion made to it, a decree obtained fraudulently, by means of its machinery, to effect a tortious purpose. No usual limit of time or other technical limitation should embarrass the court in detecting an offense of that nature, and of suitably correcting its decrees. A judgment obtained by fraud, or to accomplish a fraud, should be protected by no such brief expiration of time as obtains for the usual purposes of reviewing conclusions upon issues. A careful examination of every case quoted by any of the parties leads to the conclusion that the authorities favor the power of the court to entertain a bill of review. If such power exist, it should be exercised in the present instance, where it is charged that the machinery of the court has been used fraudulently by one of the owners of a vessel for the purpose of depriving his co-owners of their rights therein. Whether the court may find means to correct such wrong, if it exist, cannot be determined at this time. Fraud is not charged against the purchasers, and therefore process should not issue against the vessel purchased by them, without suitable indemnity. Respecting this matter counsel will be heard. But process in personam may issue against all the parties to the action.